# Exhibit A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is made by and between Yolonda Frasier ("Frasier") and Wells Fargo Bank National Association and Wells Fargo & Company (collectively, the "Bank").

## RECITALS

WHEREAS, Frasier has brought certain claims against the Bank, which are pending in the United States District Court, Western District of North Carolina, in an action entitled *Yolonda Frasier v. Wells Fargo Bank N.A.*, filed under Case No. 3:12-cv-00737 (the "Litigation");

WHEREAS, the Bank denies the allegations in the Litigation and asserts that at all times it acted lawfully toward Frasier;

WHEREAS, a bona fide dispute exists between the Bank and Frasier with respect to whether Frasier is due any wages claimed; and

WHEREAS, Frasier and the Bank (collectively, the "Parties") wish to avoid the risk and expense of continued litigation.

In consideration of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Full and General Release by Frasier.** In exchange for the promises contained in this Agreement, Frasier agrees that she or any person acting by, through, or under her releases the Bank, and, as applicable, its parents, subsidiaries, affiliates, directors, officers, employees, former employees, attorneys and agents, including all employee benefit plans sponsored or administered by any of them (collectively, the "Released Parties"), from any and all claims that were or could have been asserted in the Litigation against them. Frasier further agrees that she will not institute any action or actions, cause or causes of action (in law or in equity), suits, debts, liens, claims, demands in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body against the Released Parties regarding any claim that was or could have been asserted in the Litigation.

    1.1. Frasier specifically agrees that there was a dispute between the Parties regarding whether Frasier was owed additional wages, compensation, overtime or premium pay, restitution, and/or penalties, that the consideration set forth in Paragraph 2 fairly compensates her for any amounts she contends is due, and that she is compromising, settling and releasing Released Parties from any and all claims for wages, compensation, overtime or premium pay, restitution, penalties, other amounts due for any services performed by Frasier for Released Parties as an employee or otherwise, and/or any other form of remedy. The release includes, but is not limited to, all claims that were or could have been brought under the Fair Labor Standards Act, the North Carolina Wage Payment Laws, and the North Carolina Wage and Hour Act.

1

1.2.	Frasier represents that as of the execution of this Agreement she is unaware of any claim or cause of action, other than those set forth in the Litigation, that she has against any of the Released Parties, including but not limited to wrongful termination, termination in violation of public policy, fraud, defamation, breach of express or implied contract, breach of the implied covenant of good faith and fair dealing, intentional or negligent infliction of emotional distress, and employment discrimination, harassment or retaliation, including, but not limited to, any violation of the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disability Act of 1990, as amended, the Family Medical Leave Act of 1993, the North Carolina Equal Employment Practices Act, the North Carolina Genetic Testing Law, the North Carolina Whistleblower Protection Law, the North Carolina Discrimination on the Basis of Sickle Cell or Hemoglobin C Trait Law, the North Carolina Domestic Violence Victims' Leave Law, the North Carolina Persons with Disabilities Protection Act, the North Carolina Off-Duty Lawful Product Use Discrimination Law, the North Carolina Retaliatory Employment Discrimination Act, the North Carolina School Involvement Leave Law, the North Carolina Constitution, or any other similar local, state or federal act or regulation.

1.3.	Frasier also agrees that she is waiving on behalf of herself and on behalf of her attorneys all claims for attorneys' fees, expenses and court costs beyond what is provided in this Agreement in paragraph 2.

1.4.	Frasier also agrees that if a claim against Released Parties is prosecuted in her name or on her behalf before any court or administrative agency, that she waives and agrees not to take any award of money or other damages from such suit. Frasier also agrees that if a claim is prosecuted in her name, that she will immediately request in writing that the claim on her behalf be withdrawn.

1.5.	Notwithstanding the above, nothing in this Agreement releases any claims which arise after Frasier's execution of this Agreement, precludes Frasier from making a claim relating to the enforcement of this Agreement, or precludes Frasier from filing a charge with or participating in an investigation by the Equal Employment Opportunity Commission or the North Carolina Department of Labor, Employment Discrimination Bureau. Frasier waives her right to any monetary recovery or other relief from Released Parties should any agency pursue claims on her behalf that arose before she executed this Agreement.

2.	**Consideration**. In exchange for the promises contained in the Agreement, unless the settlement is not approved by the Court, the Bank agrees to pay Frasier the amount of $▇▇▇▇ as follows: $▇▇▇▇ shall constitute wages; and $▇▇▇▇ shall be allocated to attorneys' fees and costs (collectively, "Settlement Amount").

2.1	The payments described above will be made on or before 15 calendar days after the Court issues an order approving the Agreement. At this time, the Bank will cause to be sent via overnight mail two checks: the first check, for $▇▇▇▇ made payable to "Faruqi & Faruqi LLP," and the second check, for $▇▇▇▇ less applicable withholdings, made payable to "Yolonda Frasier." The Bank shall ensure that withholdings on the second check are taken at

2

Frasier's last applicable yearly rate of pay while at Wells Fargo. Both checks shall be sent to Faruqi & Faruqi LLP, 101 Greenwood Avenue, Suite 600, Jenkintown, PA 19046. The Bank shall report the amounts paid to Yolonda Frasier on a form W-2 as wages to her. The Bank shall report the amounts paid to Faruqi & Faruqi, LLP on a form 1099 as paid to Faruqi & Faruqi, LLP.

2.2 Frasier acknowledges that this consideration is being paid in full settlement of all claims that were or could have been raised against the Released Parties and includes amounts to which Frasier otherwise would not be entitled. Specifically, Frasier acknowledges that this settlement reflects full payment of all amounts she contends (or may contend) was owed under state and federal law, as well as all attorneys' fees and costs incurred by Frasier. Frasier further acknowledges that the Bank would not agree to make this payment unless she signed the Agreement and agreed to fulfill the promises contained herein, including the promise to execute and file a Request for Dismissal as set forth in Paragraph 4 below.

3. **Reporting Requirement**. Frasier acknowledges that the Bank must report to the Internal Revenue Service (as well as state and local taxing authorities where applicable) the payments made to her under this Agreement, and that it is her responsibility to make tax payments on those amounts, if applicable. If, for any reason, at any time, a claim is made against the Bank for withholdings of any kind on any part of the consideration described above, Frasier agrees to indemnify the Bank for any assessments, interest, payments, penalties or fines which may be imposed against the Bank. Frasier further agrees to reimburse the Bank for its reasonable attorneys' fees incurred in seeking such indemnification or reimbursement.

4. **Dismissal of Claims**. After executing this Agreement and approval by the Court as set forth in Paragraph 5 below, pursuant to Federal Rule of Civil Procedure 41(a), Frasier will file a Stipulation of Dismissal with prejudice as to her individual claims and without prejudice as to the putative collective and class claims in the case entitled *Yolonda Frasier v. Wells Fargo Bank N.A.*, filed under Case No. 3:12-cv-00737, currently pending in the United States District Court, Western District of North Carolina, and will take any other steps necessary to dismiss the Litigation. The enforceability of this Agreement is expressly conditioned upon the Court dismissing Frasier's individual claims with prejudice.

5. **Approval of Settlement**. The parties will jointly request that the Court approve the settlement, including but not limited to approval of the settlement of overtime claims under the Fair Labor Standards Act. The parties shall jointly file a motion for approval of this settlement as fair, reasonable and adequate. The amount of the consideration payable to Frasier shall be redacted from copy of the Agreement submitted to the Court for approval, to protect Frasier's private financial information and the Bank's business interests. Upon order of the Court, the unredacted settlement Agreement may be provided to the Court for in camera review or made part of the public record. The effectiveness of this Agreement is contingent upon the Court's approval of the settlement.

6. **No Other Claims Exist**. Frasier represents that no claim, charge, complaint, or action filed by her or on her behalf exists in any forum or form against any of the Released Parties other than the Litigation described in Paragraph 4 above. Frasier is unaware of any reason for, and is not contemplating making, a claim, charge or complaint against the Bank.

3

## 7. Confidentiality.

7.1    Frasier and her counsel represent and warrant that they have not discussed the terms of the Agreement and/or the negotiations leading thereto with anyone (except between themselves and within the law firms of Jackson & McGee, LLP and Connolly Wells & Gray, LLP as necessary to reach resolution).

7.2    Frasier and her counsel represent and warrant that they will keep strictly confidential and will not communicate or disclose to any other person or entity, natural or otherwise, except as required by law, an order of the Court, or upon the prior written consent of the Bank, the Settlement Amount, or the negotiations leading to settlement. Frasier further agrees not to disclose the terms and provisions of this Agreement to any other person or entity other than her legal spouse, her attorney(s), her accountant(s), and state and federal taxing authorities and that she will not make public or disclose to anyone in any manner the Settlement Amount, the Agreement or the negotiations leading thereto unless required to do so by law. To the extent the Settlement Amount must be disclosed to the individuals set forth above, Frasier will advise them of, and they shall be bound by, this Confidentiality provision.

7.3    Upon inquiry by any person about the status of any facts relating to the dispute between the parties or any lawsuit, action, judicial proceeding, or administrative charge filed or otherwise pursued prior to the date of this Agreement, Frasier and her counsel shall state that the matter has been resolved. Frasier and her counsel shall make no mention of, or allude in any way whatsoever, to the settlement amount received from the Bank.

7.4    Frasier further agrees that the non-disparagement and confidentiality provisions contained in the Agreement are material clauses of this Agreement, such that if she or her representatives violate any provisions of those paragraphs, or if any information is disclosed in violation of paragraphs 7 or 8, her action shall be the basis for a lawsuit in equity and in law, as damages are not readily capable of specific determination.

7.5    Frasier's counsel agree not to issue a press release, respond to inquiries (by any member of the press or otherwise), publicize the result of this action, use the result of the action as advertising material, or otherwise make public or disclose to anyone in any manner the terms of the Agreement or the negotiations leading thereto unless required to do so by law.

8.    **Non-Disparagement**. Frasier agrees that she will not defame or disparage the Released Parties, and, if applicable, their business, products, management or employees. Frasier specifically agrees that she will not make negative statements about the Bank, or make statements that place the Bank in a negative light. Similarly, the Bank, on behalf of its Board of Directors, Officers, and Managers, agrees that it will not directly or indirectly defame or disparage Frasier and that if contacted by anyone regarding Frasier they will only provide one or more of the following: (i) confirm that Frasier was employed by the Bank, (ii) provide the positions held by Frasier and/or the dates of her employment, and (iii) state that this matter has been amicably resolved. Finally, the Released Parties agree not to contact the press or issue a press release regarding the resolution of this Litigation.

4

9. **Remedies In Event of Breach.** The Parties acknowledge that each would be irreparably harmed by any breach of the commitments in the Agreement by the other party, and that in the event of any such breach, the prevailing party shall be entitled to the recovery of all costs and attorneys' fees incurred in bringing an action for breach of the Agreement. Any such action would have no effect on the validity or enforceability of the Agreement.

10. **No Future Employment or Work.** Frasier agrees that she will not apply for or accept employment with or work as an independent contractor for the Bank or with any entity which is affiliated with the Bank, its subsidiaries or parent companies. Frasier agrees that if she does accept such employment or work, the existence of this Agreement constitutes good cause to terminate Frasier's employment with or any agreement to perform work for such entity or entities.

11. **Neutral Reference.** In response to any inquiry from a prospective employer, the Bank shall only confirm that Frasier was employed by the Bank, the positions held by Frasier, and the dates of such employment.

12. **Governing Law and Interpretation.** This Agreement shall be governed in accordance with the laws of the State of North Carolina without regard to its conflict of laws provision. If any provision of the Agreement shall be held void or unenforceable, the remainder of the Agreement shall remain in full force and effect, and the Agreement shall be construed as if such void or unenforceable provision were omitted; provided that in interpreting the Agreement a court shall replace such void or unenforceable provision with an effective and legally permissible provision the effect of which shall be identical to, or as close as reasonably possible to, the effect of the original provision.

13. **Non-Admission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for the Agreement shall be deemed or construed at any time for any purpose as an admission by any party of any liability or unlawful conduct of any kind. The Bank specifically denies all of Frasier's claims and charges, particularly those that form the basis of the claims being released.

14. **Amendment.** This Agreement may not be modified, altered or changed except upon express written consent of all parties wherein specific reference is made to the Agreement.

15. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties, and fully supersedes any prior agreements or understandings between the Parties. The Parties acknowledge that they have not relied on any representations, promises, or agreements of any kind made to any of them in connection with the decision to accept the Agreement, except for those set forth in the Agreement. The Agreement shall be binding upon the Parties, their heirs, executors, successors and assigns.

16. **Representations.** Each Party represents to the other that in executing the Agreement, she or it does not rely and has not relied upon any representation or statement not set forth herein, made by any other party or by any other party's agents, representatives, or attorneys with regard to the subject matter, basis or effect of the Agreement or otherwise.

17. **Advice From Counsel.** The Parties acknowledge that they are represented by

5

counsel in this matter and have sought advice from an attorney regarding the effect of the Agreement prior to signing it.

18. **Authorization to Enter Into Agreement.** Each individual signing the Agreement warrants that he or she is expressly authorized to enter into the Agreement on behalf of the party or parties for which the individual signs. Upon execution, the Agreement shall be binding on the Parties.

19. **Section Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of the Agreement.

20. **Understanding of Agreement.** The Parties acknowledge that they have read the above paragraphs and fully understand the terms, nature, and effect of this Agreement, which they voluntarily execute in good faith, and deem to be fair and equitable settlement of this matter.

21. **Facsimile and Counterparts.** This Agreement may be executed by facsimile (or scanned email) and in counterparts. The Agreement will be binding on the Parties once it has been fully-executed. Thereafter, the Parties shall exchange hard copies, and all the counterparts together shall constitute a single original Agreement.

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily execute this Agreement as of the dates set forth below:

YOLONDA FRASIER

_Yolonda Frasier_

Date: 5-8-2014

WELLS FARGO BANK, N.A.
WELLS FARGO & COMPANY

By: _[signature]_

Its: SVP _Human Resources_

Date: 5/8/2014

APPROVED AS TO FORM:

CONNOLLY WELLS & GRAY, LLP

By: _[signature]_
Gerald D. Wells, III

6